UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAMON BRADLEY #237222,

        Plaintiffs,                              Hon. Robert J. Jonker

v.                                               Case No. 1:16-cv-715

S. CONARTY, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 24). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this matter **terminated**.

## BACKGROUND

The following allegations are contained in Plaintiffs' complaint. (ECF No. 1). On January 21, 2016, Plaintiff injured his knee while performing his prison work assignment in food services. After informing Food Service Supervisor, S. Conarty of the matter, Plaintiff reported to Health Services. Plaintiff was examined, but was also informed that his supervisor was required to complete an injury report. Plaintiff returned to his work assignment, but Conarty refused to complete an injury report. Plaintiff responded by informing Conarty and Food Service Director, J. Yoder, that he would be filing a grievance which he did the following day.

On February 11, 2016, Conarty and Yoder both pressured Plaintiff to "sign off" on his grievance. Plaintiff refused to do so, at which point Yoder commented to Plaintiff, "you must don't like

working for us." Plaintiff later overheard Conarty advise Yoder to terminate Plaintiff's work assignment. Later that day, Plaintiff was informed that his work assignment was being terminated due to two poor work evaluations that had recently been submitted by Yoder.

Plaintiff initiated this action on June 10, 2016, against Conarty and Yoder, as well as their employer, Trinity Food Services. Plaintiff asserts that the termination of his work assignment constituted unlawful retaliation in violation of his First Amendment rights. Plaintiff seeks monetary and injunctive relief. Defendants now move for summary judgment.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere

allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.        **Defendants Conarty and Yoder**

Plaintiff alleges that Defendants Conarty and Yoder unlawfully retaliated against him, by submitting two unfavorable work evaluations which led to the termination of his prison work assignment, in response to Plaintiff filing a grievance alleging that Defendant Conarty refused to complete an injury report. The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Defendants are entitled to summary judgment on the ground that Plaintiff did not suffer adverse action sufficient to maintain a retaliation claim.

Before addressing the adverse action element, a brief discussion of the other two elements is appropriate. Defendant argues that Plaintiff was not engaged in protected conduct because the grievance he filed alleging a failure by Defendant Conarty to complete an injury report was frivolous. The Court is not persuaded. The investigation into Plaintiff's grievance revealed no indication that Defendant Conarty submitted an injury report as required by MDOC policy. (ECF No. 26-2 at PageID.138). Defendants can hardly characterize as frivolous the filing of a grievance when the subsequent investigation suggests that the grievance's allegations have merit. Accordingly, this argument is rejected.

With respect to the causation element, Defendants argue that because the decision to issue two unfavorable evaluations of Plaintiff's work performance, which prompted the termination of Plaintiff's work assignment, was appropriate, Plaintiff cannot establish that they were motivated by improper considerations. While Defendants have submitted evidence that Plaintiff's poor work evaluations were justified, Plaintiff has likewise submitted evidence which, if believed, demonstrates that Defendants' poor work evaluations of Plaintiff were premised on fabrications. (ECF No. 26-1 at PageID.96-103; ECF No. 26-2 at PageID.122-30; ECF No. 29 at PageID.165-72). In light of this conflicting evidence, summary judgment is not appropriate based on this element.

As for the adverse action element, the question, simply stated, is whether termination of Plaintiff's prison work assignment is sufficiently adverse to maintain a First Amendment retaliation claim. The undersigned concludes that, at least in the present circumstance, such is not the case. The Court has not located, and the parties have not identified, any Sixth Circuit authority directly or definitively addressing this particular question. The Court, however, finds that there exists Sixth Circuit authority concerning adverse action in an analogous context which counsels in favor of the outcome recommended herein.

The Sixth Circuit has long held that prisoners possess no right to be confined in any particular prison. *See, e.g., Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986); *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013). Recognizing that prisoners "are expected to endure more than the average citizen," the Sixth Circuit has concluded that the mere transfer from one correctional facility to another is not an adverse action sufficient to maintain a retaliation claim. *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005). This conclusion is intended to prevent the trivialization of the protections afforded by the First Amendment and, furthermore, to prevent federal courts from micro-

managing correctional facilities, a task which courts are neither authorized nor competent to undertake. *Id.* at 701; *Bell v. Wolfish*, 468 U.S. 520, 546-47 (1979) (prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security").

On the other hand, if the transfer of a prisoner to another facility causes the prisoner to experience "foreseeable, negative consequences," such as an impairment of the prisoner's ability to access the courts, the transfer will be deemed sufficiently adverse to satisfy the adverse action element of a retaliation claim. *See, e.g., Jones v. Caruso*, 421 Fed. Appx. 550, 553 (6th Cir., Apr. 28, 2011). The Court interprets this authority as standing for the straightforward proposition that the loss by a prisoner of something to which he enjoys no right, unless accompanied by some additional negative consequence, such loss is insufficient to maintain a retaliation claim. Applied to the present circumstance, this analytical framework compels the conclusion that the loss by Plaintiff of his prison work assignment is not an "adverse action" for purposes of asserting a claim of unlawful retaliation.

It has long been recognized that prisoners possess no right to prison employment or to any particular prison work assignment. *See, e.g., Dobbins v. Craycraft*, 423 Fed. Appx. 550, 552 (6th Cir., May 17, 2011). The same holds true under Michigan law which affords to prison administrators "complete discretion regarding prison work assignments." *Ibid*. Furthermore, inmates performing prison work assignments are not considered "employees." *See* Michigan Department of Corrections, Policy Directive 05.02.110 ¶ A (eff. Feb. 25, 2008). Thus, prison work assignments "are not employment in the traditional sense, but a condition of confinement." *Nettles v. Smoker*, 2015 WL 1565429 at *5 (W.D. Mich., Apr. 8, 2015) (collecting cases).

Given that a prison work assignment is simply a condition of confinement regarding which prisoners enjoy no right or protected interest, the Court concludes that unless the termination of the prison work assignment is accompanied by "foreseeable, negative consequences," such as impairment of the prisoner's ability to access the courts, such does not constitute "adverse action" sufficient to maintain a retaliation claim. This conclusion is consistent with the framework discussed above concerning claims of retaliatory transfer. It is also consistent with the conclusion reached by a growing number of courts that termination of a prison work assignment is not adverse action. *See Nettles*, 2015 WL 1565429 at *5 (collecting cases). Plaintiff has neither alleged nor presented evidence that the loss of his prison work assignment resulted in the type of negative consequences alluded to above. Accordingly, the undersigned recommends that summary judgment be granted to Defendants Conarty and Yoder.

**II.      Trinity Food Services**

Plaintiff alleges that Trinity Food Services "failed to properly train and supervise" Defendants Conarty and Yoder "concerning humane treatment of prisoners." (ECF No. 1 at PageID.6). Defendants have interpreted Plaintiff's allegations as asserting a respondeat superior claim. (ECF No. 25 at PageID.75-77). Plaintiff responds that his "claim against Trinity is not based upon 'respondeat superior' theory. . .but upon 'a failure to train or supervise' theory." (ECF No. 28 at PageID.160).

To prevail on a failure to train claim, Plaintiff must prove that his injuries were caused by a Trinity Food Services policy or custom. *See Ellis v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Plaintiff's claim fails for two reasons. First, as discussed above, Plaintiff has suffered no violation of his rights. Second, Plaintiff has presented absolutely no evidence that any injury

he may have suffered was caused by a policy or custom enacted, adopted, or endorsed by Trinity Food Services. Accordingly, the undersigned recommends that Defendant Trinity Food Services is entitled to summary judgment on Plaintiff's failure to train claim.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 24), be **granted** and this matter **terminated**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: August 8, 2017

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge